UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

AARON HOWLAND,

        Plaintiff,

   v.

BUDGET HOME CENTER, INC.
d/b/a BUDGET HOME SUPPLY


        Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Aaron Howland, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint against Budget Home Center, Inc. d/b/a Budget Home Supply ("Budget" or "Defendant") states and alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination toward, and wrongful termination of Plaintiff because Plaintiff suffers from one or more disabilities within the meaning of the Americans with Disabilities Act and because Plaintiff filed a workers' compensation claim.

2.    On October 7, 2019, Plaintiff was injured at work and promptly sought medical treatment.

3.    On October 7, 2019, Plaintiff filed a workers' compensation claim.

4.    On or around October 7, 2019, Defendant knew that Plaintiff filed a workers'

compensation claim.

5.      On October 8, 2019, Mr. Howland's doctor diagnosed him with a sprain/strain of the lumbar spine, low back pain, and muscle spasms.

6.      Per his medical provider, Mr. Howland was allowed to return to work with restrictions.

7.      Mr. Howland made Defendant aware that he was allowed to return to work with restrictions.

8.      When he returned, however, Defendant refused to allow Mr. Howland to adhere to his medical restrictions.

9.      Plaintiff requested reasonable accommodations from Defendant.

10.     Defendant denied the accommodations.

11.     Thus, Mr. Howland's doctor instructed Plaintiff to take one week off of work for recovery.

12.     Plaintiff informed Defendant that he would need one week off of work to recover.

13.     When Mr. Howland requested the accommodation of leave to recover – as instructed by his doctor – Defendant responded negatively.

14.     Paul Elliott (Operations Manager, and Mr. Howland's supervisor) stated to Mr. Howland: "Enjoy your week off…. This is not funny at all."

15.     On November 13, 2019, Defendant instructed Mr. Howland to perform a number of tasks that were prohibited by his doctor-imposed medical restrictions.  When Mr. Howland explained that he was prohibited from performing certain tasks because of the medical restrictions, Defendant issued Mr. Howland two write-ups for alleged insubordination.

16.     On or around November 15, 2019, Defendant terminated Mr. Howland.

## PARTIES

17.     Plaintiff is, and at all times relevant to this Complaint was, a resident of Colorado.

18.     Defendant Budget Home Center, Inc. d/b/a Budget Home Supply ("Budget") is a Colorado corporation with a principal office address of 780 Boston Avenue, Longmont, Colorado 80501.

19.     At all relevant times, Budget was Mr. Howland's "employer" within the meaning of the Americans with Disabilities Act.

20.     Defendant is an employer within the meaning of 42 U.S.C. § 12111(5)(A), in that Defendant has 15 or more employees each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

21.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

22.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction over Plaintiff's state claim pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claim is so related to the federal claims that they form part of the same case or controversy.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

24.     Plaintiff incorporates by reference the above paragraphs as though set forth

separately herein.

25.     Plaintiff filed his Charge of Discrimination, Number 32A-2020-00221 with the Equal Employment Opportunity Commission for disability discrimination and retaliation on or about January 10, 2020.  Plaintiff was issued a Notice of Right to Sue with Respect to Charge Number 32A-2020-00221 pursuant to 42 U.S.C. § 2000e-5(f)(1) on October 21, 2020.  Plaintiff filed the present action within ninety (90) days of receipt of same.

26.     Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

27.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

28.     Mr. Howland worked for the Defendant from May 21, 2018 to his unlawful termination on November 15, 2019.

29.     Mr. Howland was promoted to Will Call Manager on or around September 24, 2018, where he worked until his unlawful termination on November 15, 2019.

30.     As Will Call Manager, Mr. Howland was responsible for overseeing shipping activities, inspecting equipment, and directing shipments.

31.     On October 7, 2019, Mr. Howland was unloading a heavy cabinet from a truck for Defendant when he heard a pop in his lower back.

32.     On or around October 7, 2019, Mr. Howland reported the injury to Defendant's Human Resources (Karen Hentges).

33.     On October 8, 2019, Mr. Howland filed a workers' compensation claim and sought medical treatment.  Dr. Bruce Cazden examined Mr. Howland, finding a sprain/strain of the lumbar

spine, low back pain, and muscle spasms.  Dr. Cazden said that Mr. Howland could return to work with restrictions until October 11, 2019.   The restrictions included alternating between sitting/standing every 10 minutes as needed; no operation of the forklift; no lifting over 10 pounds; and no forward bending or twisting at the waist.  Dr. Cazden also recommended six sessions of physical therapy.

34.     On October 15, 2019, Dr. Cazden examined Mr. Howland and issued the same medical restrictions as before, this time until October 21, 2019, with the addition of "[s]eated work only."

35.     Unfortunately, Defendant refused to allow Mr. Howland to adhere to his medical restrictions.  The following are a few examples:

(a) On October 15, 2019, Mr. Howland was forced to walk 11,542 steps.

(b) On or about October 15, 2019, Mr. Howland told Mr. Elliott that he was not supposed to be walking per his doctor's orders (walking from the Will Call area on the far North end of the building, to the lumber yard on the far South end of the building) because of his medical restrictions.  Mr. Elliott responded: "Well it needs to be done.  And somebody needs to do it."  By this, he meant that Mr. Howland needed to do it because it was his job.

(c) On numerous occasions in October 2019 to the date of his wrongful termination on November 15, 2019, Mr. Howland reported to Mr. Elliott: "My back is not getting better because I am not allowed to adhere to my restrictions."  On these occasions, Mr. Elliott responded (paraphrased): "I have a herniated disc in my back and you don't hear me complaining."

(d) Throughout the period in which he was advised to adhere to medical restrictions, Mr. Howland had to take hardware from the Staging Shelf to the Delivery Shelf or take hardware to the shipping dock.  Again, this violated his medical restrictions.

(e) On numerous occasions in October 2019 to the date of his wrongful termination on November 15, 2019, Mr. Elliott instructed Mr. Howland to locate will call items and/or special order items that needed to be delivered.  All of those items were sitting on "stickers," i.e., tiny pieces of wood, low to the ground.  Likewise, Mr. Elliott repeatedly insisted that Mr. Howland check delivery trucks, which requires bending, twisting, and often lifting items over 10 pounds.  Although Mr. Howland protested that he could not execute these tasks because of his restrictions, Mr. Elliott insisted.

(f) On October 22, 2019, Mr. Howland was forced to walk 3,118 steps.

36.     On October 25, 2019, Dr. Cazden noted that Defendant "is not following work restrictions of sedentary work."  Due to Mr. Howland's lack of improvement in condition, Dr. Cazden decided Mr. Howland needed an MRI to assess whether there was disc herniation or tear and instructed Mr. Howland to continue with physical therapy and chiropractic treatment in the meantime.

37.     Because Defendant refused to assign Mr. Howland light duty work, Dr. Cazden said Mr. Howland was temporarily unable to work, until November 1, 2019.

38.     On October 28, 2019, after Defendant received Mr. Howland's October 25, 2019 medical restrictions – stating that he needed time off of work for recovery – Mr. Howland received an angry text message from Paul Elliott (Operations Manager, and Mr. Howland's supervisor), stating: "Enjoy your week off…. This is not funny at all."  Mr. Howland was forced to explain that

the week of leave was an accommodation requested by his doctor:



39.    Mr. Howland underwent an MRI, as instructed, and was reevaluated by Dr. Cazden on November 1, 2019.   Dr. Cazden recommended that Mr. Howland continue undergoing conservative treatment – physical therapy and chiropractic sessions – and instructed Mr. Howland to take off of work for another week, with an anticipated return-to-work date of November 11, 2019.

40.    When Mr. Howland provided the restrictions to Defendant, Defendant again mocked him.   This time, Mr. Elliott (whose computer Mr. Howland frequently worked from) emailed Sean Angelo (General Manager): "It looks like Aaron has the Dr. totally believing that we are not following his orders."   The email read as follows:



41.     On November 8, 2019, Dr. Cazden stated that Mr. Howland could return to work with temporary medical restrictions: no lifting over 10 pounds; no forward bending or twisting at the waist; mostly seated work; limit walking to 15 minutes per hour; and alternate sitting and standing every 10 minutes as needed for comfort.  Dr. Cazden indicated that Mr. Howland's condition and restrictions would be reevaluated on November 22, 2019.

42.     On or around November 11, 2019, Mr. Howland returned to work with medical restrictions.  However, Defendant again refused to abide by the restrictions.

43.     On or around November 13, 2019, Defendant instructed Mr. Howland to perform a number of tasks that were prohibited by his medical restrictions.  For example:

(a) Defendant instructed Mr. Howland to fulfill certain dispatch duties, including load-
   checking the trucks to be sure that all of the right material is being delivered to the job

site.

(b) Because this instruction would violate the doctor's order to refrain from bending at the waist, Mr. Howland explained that his medical restrictions prohibited him from completing the newly-assigned tasks.

(c) Mr. Elliott: "So you are just refusing to do the job?"

(d) Mr. Howland responded: "No, I'm not refusing to do it.  I *can't* do it."

44.    Following this interaction, in which Mr. Howland explained that he was prohibited from performing certain tasks because of the medical restrictions, Defendant (through Paul Elliott) gave Mr. Howland two write-ups, claiming that he was insubordinate.

45.    On or around November 15, 2019, Mr. Howland was terminated.

## FIRST CLAIM FOR RELIEF
**(Disability and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A) Against Defendant)**

46.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

47.    Plaintiff is a disabled person within the meaning of the ADA.

48.    Plaintiff suffers from back problems, including but not limited to sprain/strain of the lumbar spine, low back pain, muscle spasms, and/or other symptoms related to same.

49.    Plaintiff was qualified for his job and capable of performing the essential functions of his position with or without a reasonable accommodation.

50.    Plaintiff was regarded as being disabled by Defendant.

51.    Defendant denied Plaintiff the reasonable accommodation of allowing him to perform only light duty work as directed by his doctor.  The requested reasonable accommodation

would not have caused Defendant an undue hardship.

52.     Defendant likewise failed to engage in the requisite good faith interactive process with Plaintiff regarding reasonable accommodations under the ADA.

53.     Instead of engaging in the requisite good faith interactive process, Defendant mocked Plaintiff for being injured.

54.     On or about November 15, 2019, Defendants discriminated against Plaintiff by terminating his employment because of Plaintiff's actual and/or perceived disabilities, in violation of the ADA.

55.     The effect of Defendant's discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of Plaintiff's disabilities, and/or because of Defendant's denial of Plaintiff's requests for reasonable accommodations based on his disabilities.

56.     Defendant's above-described conduct was intentional.

57.     Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

58.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## <u>SECOND CLAIM FOR RELIEF</u>
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a) Against Defendant)**

59.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

60.     Since October 8, 2019, Plaintiff made numerous requests for reasonable accommodations related to his disabilities.  In doing so, Plaintiff was engaging in activity protected under the ADA.

61.     Defendant retaliated against Plaintiff after he engaged in the above-described protected activity.

62.     More specifically, Defendant terminated Plaintiff's employment.   These consequences are of the type that would tend to discourage similarly situated employees form requesting accommodations and/or complaining about or opposing illegal discrimination.

63.     A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e. Defendant discharged Plaintiff because he requested and/or required reasonable accommodations related to his disabling medical condition(s).

64.     Defendant's above-described conduct was intentional.

65.     Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

66.     As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**(Wrongful Termination in Violation of Public Policy Against Defendant)**

67.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

68.     Plaintiff's employment was terminated by Defendant in retaliation for him being

injured on the job and his filing of a valid Workers' Compensation claim and, thus, exercising his rights under the Workmen's Compensation Act of Colorado, C.R.S. § 8-4-101, *et seq.*

69.     Defendant's termination of Plaintiff's employment was in violation of public policy of the state of Colorado.

70.     Plaintiff suffered mental and emotional distress as a direct and proximate result of Defendant's above-described acts and omissions.

71.     Plaintiff has suffered and will suffer lost wages and employment benefits as a direct and proximate result of Defendant's above-described acts and omissions.

72.     The above-described acts and omissions of Defendant were willful, malicious, oppressive, and calculated to discourage Plaintiff and Defendant's other employees from pursuing job-related rights under Colorado law.

73.     As a result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and he is entitled to such general and special damages, economic damages, and garden-variety emotional distress damages as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant and order the following relief as allowed by law:

A.     Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B.     Punitive damages as allowed by law;

C.      Attorneys' fees and costs of this action;

D.      Pre-judgment and post-judgment interest at the highest lawful rate; and

E.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 19th day of November 2020.


**HKM EMPLOYMENT ATTORNEYS LLP**


By: */s/ Jesse K. Fishman*
          Claire E. Hunter
          Jesse K. Fishman
          HKM Employment Attorneys LLP
          730 17th Street, Suite 750
          Denver, Colorado 80202
          chunter@hkm.com
          jfishman@hkm.com
          *Attorneys for Plaintiff Aaron Howland*

13